DE BOCK v. AMERICAN BRIDGE CO.

(Supreme Court, Appellate Division, Fourth Department.   March 3, 1909.)

1. Master and Servant (§ 276*)—Actions—Sufficiency of Evidence—Cause of Accident.

In an action for injuries caused by falling through the upper deck of a traveler on which were several hoisting derricks, one of which fell while a column was being raised from the cellar of the building by a rope run down over the side of the traveler, evidence *held* not to show that the running of the rope over the edge of the traveler without making an angle by a pulley increased the vibration of the traveler so as to shift beams on the upper deck, thereby removing the support of a plank on which intestate was when he fell.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 951; Dec. Dig. § 276.*]

2. Master and Servant (§ 124*) — Place of Work — Inspection — Master's Duty.

In constructing a steel building, a hollow tube called a traveler, on which were two derricks, was used to move material, there being nothing on the upper deck of the traveler except three beams weighing about a ton each, across which were laid several heavy planks. In order to lift a column from the cellar beneath the traveler, a rope was run from the engine on the lower deck to the column without using a pulley block to make an angle where the rope ran over the sill of the traveler, and, in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

raising the·column, the rope cut into the·sill, and the traveler shook considerably, and the dog on the derrick drum slipped, which caused the derrick beam to fall, and the whole derrick fell into the cellar. Five minutes thereafter the foreman, who was in the basement, ordered decedent to go to the upper deck, and see if the other derrick was all right, and, as he walked over the planks which rested on the beams, one of them gave way because a beam had been shifted aside, leaving the plank unsupported, and decedent fell, and was killed. Decedent was an experienced man, and had an unobstructed view of the beam from the lower deck, and knew that the foreman had not inspected the upper deck after the derrick fell. *Held*, that the foreman was not negligent in failing to ascertain the condition of the upper deck before sending decedent there to inspect it, since, if the falling of the derrick made the situation more dangerous, he could assume, under the circumstances, that decedent would appreciate ihe danger better than himself.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 239; Dec. Dig. § 124.*]

3. MASTER AND SERVANT (§ 129*)—INJURIES—ACTION—PROXIMATE CAUSE.
    Even if the foreman was negligent in not passing the rope through a pulley in raising the column and his negligence caused the derrick to fall, the displacement of the beam on the upper deck of the traveler by which the support of the plank was removed could not have been reasonably apprehended so as to make such negligence the proximate cause of the injuries, even though the planks were not nailed to the beam.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 258; Dec. Dig. § 129.*]

Appeal from Trial Term, Monroe·County.

Action by Elizabeth De Bock, as administrator of Abraham De Bock, deceased, against the American Bridge Company of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Percival Dewitt Oviatt, for appellant.
George H. Harris, for respondent.

SPRING, J. On the 9th day of May, 1906, and for some time prior thereto, the plaintiff's intestate, Abraham De Bock, 31 years of age, was in the employ of the defendant as a structural steel worker, assisting in the erection of the iron work on the Duffy-McInnerney Building in the City of Rochester. This iron work had progressed so that the frame for the first story of the building was mostly in place. The structure was composed of heavy metal girders and columns, and for the purpose of setting them in place large derricks were used. As the work advanced it was necessary that these derricks be moved about. For the accomplishment of this purpose two large working derricks were placed on what is called a "traveler," which was moved or rolled on fixed tracks from place to place about the structure. The traveler was a hollow cube; the floors being 30 feet square and the height between the two decks being 25 feet. It was well constructed of heavy timbers. One-half of the lower deck was planked. The northwest. half was not covered so as to leave unobstructed the view from the lower floor of the traveler to the cellar below. On the upper deck and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lying north and south were three beams 12 inches square and 40 feet long, each weighing about one ton. They were not fastened to the frame, and the middle one extended some three or four feet beyond the sides of the traveler. On the upper deck were two derricks—one on the northest and one on the northwest corner. These derricks consisted of a vertical rotating mast 12 by 14 inches and 30 or 35 feet high, and attached at the bottom and extending outward 60 feet was the boom. Each derrick was supported by two heavy wooden timbers called stiff legs, extending from the top of the mast to the opposite corners. After the erection of the last derrick and at the time of the accident to plaintiff's intestate, the only flooring on the upper deck consisted of about six 16-foot planks laid across the three heavy timbers or beams. These planks were a foot wide and 2 inches thick, and each weighed about 100 pounds. They lapped over the middle beam. At the time of the accident to the plaintiff's intestate, this flooring was about six feet wide; thus leaving the greater space on the upper deck uncovered. On the lower deck of this traveler were placed the engine, shafting, boiler, and machinery which were used in operating the derricks on the upper deck. The contrivance used for this purpose was the regular niggerhead and drum arrangement connected with the engine. Each derrick was supplied with a drum and two niggerheads. The use of the drum was to wind up the cable, and thus raise and lower the boom on the derrick, and the boom was held in its particular position by a dog which fitted into a ratchet. The lines which were used to raise and lower the loads on the booms were permanently attached to the drums and the niggerheads were used to wind up these lines, and thus raise and lower the load attached to the derrick.

On the day in question one Splan, the foreman in charge of the work for the defendant and under whom De Bock was employed, desiring to move a six-ton column in the basement or cellar of the building, ordered a line run for that purpose. Splan was in the cellar, and, in pursuance of his direction, the line was run from the engine down over the sill of the lower deck to a block in the basement, thence to the column to be moved. The rope which was used was not put through a block for the purpose of making the angle from the engine to the basement and over the sill of the traveler. Instead, the rope was allowed to come in direct contact with the wooden sill as it made the turn or dip from the lower deck to the basement. There were proper blocks furnished for this purpose, but none was used. Neither of the derricks was used in this operation, and both were idle. The running of the line was done by De Bock's fellow workmen, and the foreman all the time was in the cellar. De Bock was an experienced workman, and had assisted in preparing a block to be used in the angle. The men down below could not see whether a block had been used or not. When the line was ready, signals were given to haul the column. The column pulled hard, and the rope as it went over the sill smoked and cut into the wood. The traveler trembled, although the evidence shows that such is the case whenever it is moving a load. While the column was being moved, the dog on the drum in some way slipped and allowed the boom of the northeast derrick to fall down. The fall-

ing boom dislocated the mast from its socket, and the whole derrick, as well as the stiff leg supports, fell into the cellar or pit below. No one was injured by this collapse, and De Bock and Cobb remained on the lower deck of the traveler. Fully five minutes elapsed, when Splan, the foreman, called out: "You fellows go up, and see if the other derrick is all right." It may be assumed that this order was intended for De Bock and Cobb, and in response to it they went aloft by means of a ladder at one corner of the traveler and started across the upper deck. They walked along one of the upper sills until the planking was reached and then on the planks. As they passed beyond the middle beam, the planking suddenly gave away, and both De Bock and Cobb were precipitated below, and the former was killed. Subsequent examination disclosed that one end of this middle 2,000-pound beam had shifted sidewise over a foot, thus leaving the middle planking unsupported.

It is claimed by the respondent that the running of the line over the sill added largely to the vibration of the traveler, and may have been responsible for the shifting of the beam. We think such a conclusion against the weight of the evidence. The mast and its outrigging supports were painted yellow, and on the side of the timber and adjacent to the derrick were yellow paint marks and bruises of some size after the accident, indicating that these supports must have struck this beam in their descent. This cause for the shifting of the beam is far more reasonable than that it was due to vibration, which theory is dependent upon expert testimony. However, the question is not very important. The collapse of the derrick inflicted no injury upon any of the workmen. Several minutes passed and it was a closed incident. Splan, the foreman, was in the basement, and could not see that the beam had been displaced. He had no intimation of any change in the location of that heavy timber, and had no reason to anticipate that it had been shifted one or two feet. De Bock and Cobb were under this beam. They had an unobstructed view above them. They were men familiar with the business—experienced in steel construction. They knew that Splan had not made any inspection of the conditions on the upper deck. He had a right to place some reliance upon the capability of these men. He sent them on a tour of inspection. In the circumstances he was not remiss in failing to ascertain the situation before sending these men upon the planking. If the falling of the derrick had rendered the situation more hazardous, he was justified in assuming that these competent men in close proximity to the place where the difficulty arose would appreciate it far better than he could from the basement.

Assuming that the defendant was negligent in not having a block for the cable to pass through, and that such omission was the master's duty instead of the act of a fellow servant or a detail of the work, and that the collapse of the derrick may be attributed to that defect, still we think no actionable negligence of the defendant was established. A new situation had arisen independent of the original negligence. The beam was out of place, no matter

what caused it.   The displacement was due to extraordinary conditions not to be reasonably apprehended and of which the foreman had no knowledge.   It is mere speculation to say that, had the planks been spiked to the beam, it would have remained stationary, although the weight of the evidence is decidedly to the effect that they were spiked to this center beam.   The planks were heavy, and the construction was safe, except for the extraordinary catastrophe which occurred.   Had this been a danger which might have been foreseen, a different rule might prevail.   It was an unfortunate accident, but the legal responsibility of the defendant for it does not appear.   The judgment should be reversed.

Judgment and order reversed, and a new trial granted upon the law and facts, with costs to the appellant to abide event.   All concur.